UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROCHELLE L. ROTH,<br><br>                    Plaintiff,<br><br>        v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | CIVIL ACTION NO. 3:22-CV-00018<br><br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

Plaintiff Rochelle L. Roth ("Roth") brings this action under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits under Titles II and IV of the Social Security Act. (Doc. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 11). For the following reasons, the Commissioner's decision shall be **AFFIRMED.**

I.   **BACKGROUND AND PROCEDURAL HISTORY**

On July 25, 2022, Roth filed applications under Title II and Title XVI for disability insurance benefits and supplemental security income benefits, alleging disability beginning on April 17, 2020, due to hydrocephalus, fibromyalgia; bipolar disorder with psychosis; major depressive disorder; post-traumatic stress disorder; anxiety; chronic headache; chronic migraine; ADHD; and double vision. (Doc. 14-1, at 248-254, 255-261). The Social Security Administration ("SSA") initially denied her application on September 24, 2020, and upon reconsideration on December 10, 2020. (Doc. 14-2, at 2-7). On December 16, 2020, Roth filed

a request for a hearing, which Administrative Law Judge ("ALJ") Frank Barletta held on March 29, 2021. (Doc. 14-2, at 40). In a written decision dated May 13, 2021, the ALJ determined that Roth "has not been under a disability, as defined in the Social Security Act, from April 1, 2020, through the date of this decision," and therefore not entitled to benefits under Titles II and IV. ( Doc. 14-2, at 33).

On January 4, 2022, Roth commenced the instant action. (Doc. 1). The Commissioner responded on April 14, 2022, providing the requisite transcripts from Roth's disability proceedings. (Doc. 13; Doc. 14). The parties then filed their respective briefs, with Roth raising one base for reversal or remand. (Doc. 15; Doc. 16; Doc. 17).

## II. STANDARDS OF REVIEW

To receive benefits under Title II or XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).[1] Additionally, to be eligible to receive Title II benefits, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131. To establish an entitlement to

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

disability insurance benefits under Title II, the claimant must establish that he or she suffered from a disability on or before the date on which they are last insured.

    A.   Administrative Review

The "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 404.1512(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1512(a)(1).

    B.   Judicial Review

The Court's review of a determination denying an application for Title II benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, No. 19-1268, 2019 WL 6998150, at *1 (3d Cir. Dec. 20, 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately

developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Roth is disabled, but whether the Commissioner's determination that Roth is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the Court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

### III. THE ALJ'S DECISION

In his written decision, the ALJ determined that Roth "has not been under a disability, as defined in the Social Security Act, from April 17, 2020, through the date of this decision. (Doc. 14-2, at 33). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4). At the outset, the ALJ determined that Roth meets the insured status requirements of the Social Security Act through December 31, 2024. (Doc. 14-2, at 22).

    A.    STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity("SGA"). 20 C.F.R § 404.1520(a)(4)(i); 20 C.F.R. § 416.920(a)(4)(i). If a claimant is engaging in SGA, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b). SGA is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 404.1572; 20 C.F.R. § 416.972. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574; 20 C.F.R. § 416.974. Here, the ALJ determined that Roth "has not engaged in substantial gainful activity since April 17, 2020, the alleged onset date." (Doc. 14-2, at 22). Thus, the ALJ's analysis proceeded to step two. (Doc. 14-2, at 22-23).

    B.    STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment—or a combination of impairments—that is severe and meets the 12-month duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an impairment or combination of impairments that significantly limits the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 1520(c); 20 C.F.R. § 416.920(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to consider step three. Here, the ALJ found that Roth has the following medically determinable impairments: "hydrocephalus, fibromyalgia, headaches, obesity, anxiety disorder, bipolar II disorder, major depressive order, schizoaffective disorder, attention deficit hyperactivity

disorder (ADHD) and posttraumatic stress disorder (PTSD)." (Doc. 14-2, at 23). In addition, the ALJ determined that Roth had non-severe impairments: cervical radiculopathy, carpal tunnel of the right wrist, and ulnar neuropathy of the right upper extremity. (Doc. 14-2, at 23).

    C.    STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii); 404.1525; 404.1526; 20 C.F.R. §§ 416.920(a)(4)(iii); 416.925; 416.926. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairment or impairments meet a listing, then the claimant is considered disabled, otherwise, the ALJ must proceed to and analyze the fourth step of the sequential analysis. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d). Here, the ALJ determined that none of Roth's impairments, considered individually or in combination, meet or equal the severity of a listed impairment. (Doc. 14-2, at 23). The ALJ considered the following listings: 12.03 (Schizophrenia spectrum and other psychotic disorders), 12.04 (Depressive, bipolar, and related disorders), 12.06 (Anxiety ad obsessive-compulsive disorders), 12.11 (Neurodevelopmental disorders), and 12.15 (Trauma- and stressor-related disorders). (Doc. 14-2, at 23-24).

    D.    RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity ("RFC"), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers "all [the claimant's] symptoms . . . and the extent to

which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a); 20 C.F.R. § 416.929(a). This involves a two-step inquiry where the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 404.1529(b)-(c); 20 C.F.R. § 416.929(b)-(c).

     Here, Roth alleged disability due to hydrocephalus, fibromyalgia, bipolar disorder with psychosis, major depressive disorder, post-traumatic stress disorder, anxiety, chronic headache, chronic migraine, ADHD, and double vision. (Doc. 14-2, at 26). Roth alleges these conditions limit her ability to work because they cause her to be confused and unable to think logically and that her mental health impairments can cause psychosis, suicidal thinking, apathy, and short-term memory problems. (Doc. 14-2, at 26-27). Roth also alleges that she has chronic pain and fatigue with sensitivity to sound, touch and light and that she has daily headaches with muscle weakness, loss of stability and that she cannot work for more than twenty minutes without taking a break or manage her personal care every day due to it making her feel as if she will faint. (Doc. 14-2, at 26-27). She also testified that she is unable to do anything when she is having a headache and that her mental health is worsened by her physical symptoms. (Doc. 14-2, at 27). The ALJ found that while Roth's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 14-2, at 27). After weighing and considering the evidence, the ALJ concluded that Roth has the

RFC "to perform light work as defined in 20 C.F.R. 404.1567(b) and 20 C.F.R. 416.967(b)," subject to the following non-exertional limitations:

> [Roth] could frequently climb ramps and stairs. [Roth] could never climb ladders, ropes, and scaffolds. [Roth] could occasionally balance, stoop, kneel and crouch. [Roth] could never crawl. [Roth] must avoid hazards in the workplace, such as unprotected heights and dangerous moving machinery. [Roth] is limited to work involving only simple, routine tasks, but not at a production rate pace. [Roth] is limited to no more than simple work-related decisions. [Roth] could tolerate no more than occasional changes in the work setting. [Roth] is limited to occasional interaction with supervisors, co-workers, and the public.

(Doc. 14-2, at 26).

E. STEP FOUR

Having assessed a claimant's RFC, at step four the ALJ must determine whether the claimant has the RFC to perform the requirements of their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 416.920(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 416.920(a)(4)(iv). Past relevant work is defined as work the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b); 20 C.F.R. § 416.960(b). If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step. 20 C.F.R. § 404.1565; 20 C.F.R. § 416.965.

Here, the ALJ determined that Roth is unable to perform any past relevant work. (Doc. 14-2, at 31). The ALJ noted past relevant work as a residential advisor supervisor, industrial lift device operator, conveyor offbearer/feeder, and store clerk, but the exertional requirements of each exceeded Roth's RFC. (Doc. 14-2, at 32). Thus, the ALJ proceeded to step five of the sequential analysis.

F.  STEP FIVE

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 416.920(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 404.1560(b)(3); 20 C.F.R. § 416.960(b)(3). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 416.920(a)(4)(v). Here, the ALJ made the vocational determinations that Roth was 31 years old on the alleged disability onset date, defined as a younger individual age 18-49 by the Regulations. (Doc. 14-2, at 32); *see* 20 C.F.R. § 404.1563; 20 C.F.R. § 416.963. The ALJ also noted that Roth "has at least a high school education" as considered in 20 C.F.R. § 404.1564; 20 C.F.R. § 416.964. (Doc. 14-2, at 32). The ALJ determined that upon consideration of these factors, Roth's RFC, and the testimony of a vocational expert, "there are jobs that exist in significant numbers in the national economy that [Roth] can perform." (Doc. 14-2, at 32-33); *see* 20 C.F.R. §§ 404.1569; 404.1569(a); 20 C.F.R. §§ 416.969; 416.969(a). The ALJ specifically identified occupations of inspector/hand packer, marker/ticketer/ and plastic medical product assembler, which are occupations with open positions ranging from 8,000 to 19,000 nationally. (Doc. 14-2, at 33). Accordingly, the ALJ determined that Roth is not disabled and denied her application for benefits. (Doc. 14-2, at 33).

IV.  DISCUSSION

On appeal, Roth argues that the ALJ failed to properly evaluate the opinion of Nurse Practitioner Teresa Blatt ("NP Blatt") and that the ALJ failed to adequately explain his analysis for rejecting the restriction which NP Blatt assessed. (Doc. 15, at 10-11). In response,

the Commissioner maintains that the ALJ properly evaluated NP Blatt's opinion in the context of the record. (Doc. 16, at 2). The Commissioner contends that substantial evidence supports the ALJ's unfavorable decision and that the decision should be affirmed. (Doc. 16, at 2).

### A. THE ALJ APPROPRIATELY EVALUATED THE OPINION OF NURSE BLATT.

Roth contends that the ALJ's rationale for finding the opinion of NP to be unpersuasive is faulty because the "ALJ makes broad generalizations, and he selectively highlights unrelated normal notations which appear to support his findings, without acknowledging many positive findings and without recognizing the significance of the underlying physical impairment which diminishes [Roth]'s ability to execute both physical and mental work-related tasks." (Doc. 15, at 12-13). Roth further avers that the ALJ's focus on a few normal findings, without discussing the mental impact of the hydrocephalus, suggests that he was unaware of the connection between this physical impairment and the array of mental limitations that it produces. (Doc. 15, at 13-14). In opposition, the Commissioner argues that the ALJ appropriately evaluated the persuasiveness of NP Blatt in accordance with the new regulations and provided a valid explanation as to why they were unpersuasive. (Doc. 16, at 16-18). Further, the Commissioner avers that, contrary to Roth's assertion, the ALJ adequately explained his assessment of NP Blatt's opinion, which was based on an appropriate and fair evaluation of the entire record. (Doc. 16, at 20-25). In response, Roth submits that neither the factors of supportability nor consistency are adequately addressed because "the ALJ's generalization that the opinion is not well-supported by the clinical findings from the treatment records does satisfy the articulation requirements of 20 C.F.R. §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1)." (Doc. 17, at

5). Roth argues that "the ALJ's declaration that 'this level of limitation is simply not consistent with the conservative level of treatment' also fails to comply with the regulations." (Doc. 17, at 5) (citing *Garry v. Kijakazi*, No. 1:20-CV-01705, 2022 WL 987654, at *5 (M.D. Pa. Mar. 31, 2022).

Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. § 404.1546(c), 416.946(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "'[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used in steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 404.1520, 404.1545, 416.920, 416.945; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018). Applying this standard to the present record, the Court finds substantial evidence that supports the ALJ's RFC determination as it pertains to the opinions of NP Blatt.

In *Cotter v. Harris*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject the evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." 642 F.2d 700, 704, 706-707 (3d Cir. 1981). However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp*, 204 F.3d at 83. "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

In making the RFC determination, "the ALJ must consider all evidence before him" and "evaluate every medical opinion . . . receive[d]." *Burnett*, 220 F.3d at 121 (citations omitted); 20 C.F.R. § 404.1527(c); *see also Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence . . . . The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects."). The Social Security Regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including … symptoms, diagnosis, and prognosis, what [the claimant] can still do despite [his or her] impairment(s), and … physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Social Security Ruling ("SSR") 96-5p further clarifies that "opinions from any medical source on issues reserved to the Commissioner must never be ignored," and specifically states that the ALJ's "decision must

explain the consideration given to the treating source's opinion(s)."[2] SSR 96-5p, 1996 WL 374183, at *3, *6 (July 2, 1996).

As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96- 5p do not apply to newly filed or pending claims after March 27, 2017). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. §§ 404,1520c(b), 416.920c(b). The Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important of these factors is the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

---

[2] SSRs are agency rulings published under the authority of the Commissioner and are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1). SSRs do not have the force and effect of the law or regulations but are to be "relied upon as precedents in determining other cases where the facts are basically the same." *Heckler v. Edwards*, 465 U.S. 870, 873, n.3 (1984).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ may but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter*, 642 F.2d at 704, 706-707. An ALJ need not undertake an exhaustive discussion of all the evidence or "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see Hur*, 94 F. App'x at 133 ("There is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record."). However, an ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see, e.g., Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262 (3d Cir. 2006) ("The only requirement is that reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings.").

During the relevant time period, NP Blatt provided counseling and mental health treatment to Roth. (Doc. 14-7, at 2-47). On June 24, 2019, Roth was seen for mental health treatment by NP Blatt who described Roth as a 30-year-old woman whose chief complaint was anxiety and depression. (Doc. 14-7, at 2). NP Blatt recorded Roth's statement, "I'm okay, not terrible. Voices are basically nonexistent" and noted that Roth endorsed improvement with Depakote and documented Roth's history of having taken Celexa "for as long as I can

remember seeing things." (Doc. 14-7, at 2). Roth denied any suicidal intentions or ideation. (Doc. 14-7, at 2). NP Blatt administered the Hamilton Anxiety Scale Instrument which yielded a score of 19, indicating moderate clinical depression. (Doc. 14-7, at 2). NP Blatt noted that Roth appeared both friendly and attentive, however, also unhappy and anxious and observed a flat affect, and noted that Roth was "fidgety and rocking in the seat." (Doc. 14-7, at 3). NP Blatt diagnosed Roth with an unspecified anxiety disorder, schizoaffective disorder, and bipolar disorder and renewed Roth's prescriptions for Celexa and Depakote. (Doc. 14-7, at 3).

On July 1, 2020, NP Blatt noted that Roth's depression was coming back again, despite increased Latuda. (Doc. 14-7, at 45). Roth described fatigue, sensory overload, and migraines. (Doc. 14-7, at 45). NP Blatt recommended that Roth visit the emergency room when she has mini-stroke symptoms, and depicted Roth as "friendly, downcast, attentive, and well-groomed but unhappy." (Doc. 14-7, at 45). NP Blatt further described Roth as "flat," however, "fully oriented, and no signs of hyperactive difficulties were observed." (Doc. 14-7, at 45). NP Blatt diagnosed Roth as having an anxiety disorder, unspecified; schizoaffective disorder, bipolar type; attention-deficit hyperactivity disorder, predominately inattentive type; and bipolar disorder, current episode depressed, severe, without psychotic features. (Doc. 14-7, at 45).

On October 6, 2020, NP Blatt observed Roth as having depression and a lack of motivation. (Doc. 14-7, at 617). NP Blatt observed that Roth's language skills were intact; however, characterized Roth's demeanor as glum. (Doc. 14-7, at 617). Roth reported feelings of anxiety and signs of moderate depression were also present, as Roth's affect was flat; however, there were no apparent signs of hallucinations and the thought content appeared to

be appropriate. (Doc. 14-7, at 617). NP Blatt diagnosed Roth with anxiety disorder, schizoaffective disorder, ADHD, inattentive type; and bipolar disorder. (Doc. 14-7, at 617).

During the December 28, 2020 session, Roth described feeling useless and not wanting to do anything; however, she confirmed improvement in her life and stated that her life was better than it had been when she first met NP Blatt. (Doc. 14-7, at 626). NP Blatt characterized Roth's articulation as "coherent and spontaneous" and although moderate signs of depression existed, her associations were intact and logical with appropriate thought content and judgment and no apparent signs of hallucinations or delusions. (Doc. 14-7, at 626). Roth was fully oriented, and her memory was considered to be intact. (Doc. 14-7, at 626). NP Blatt offered the same diagnoses of anxiety; schizoaffective disorder; ADHD, predominately inattentive; and bipolar disorder. (Doc. 14-7, at 627).

On January 17, 2021, NP Blatt completed a Mental Residual Functional Capacity Assessment and assessed moderate restrictions in several areas of mental functions. (Doc. 14-7, at 635-36). NP Blatt assessed Roth as markedly limited in her ability to sustain an ordinary routine without special supervision and markedly limited in her ability to work in coordination with or proximity to others without being distracted by them. (Doc. 14-7, at 635-636). NP Blatt opined that Roth's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods is markedly limited. (Doc. 14-7, at 636). In the explanation section of her functional assessment, NP Blatt reported that Roth is currently limited in functional ability due to medical and mental health issues; she reported that Roth has difficulty remembering and completing simple tasks, and she opined that currently, a work environment would be detrimental. (Doc. 14-7, at 637).

The Court finds that the ALJ's evaluation of the opinion of NP Blatt comported with the new regulatory scheme and is supported by substantial evidence. "Nothing in the Social Security Act or governing regulations requires the ALJ to obtain matching 'opinion' evidence to fashion a claimant's RFC." *Myers v. Berryhill*, 373 F. Supp. 3d 528, 538 (M.D. Pa. 2019). "[T]he ALJ is responsible for making an RFC determination . . . and he is not required to seek a separate expert medical opinion." *Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003); *see Butler v. Colvin*, 3:15-CV-1923, 2016 WL 2756268, at *13 n.6 (M.D. Pa. May 12, 2016) (rejecting the argument that a medical opinion is required to craft an RFC). "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). An ALJ "is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011). The ALJ is expressly not required to "seek outside expert assistance." *Chandler*, 667 F.3d at 362 (citing 20 C.F.R. §§ 404.1546(c), 404.1527(d), and SSR 96-5p).

Here, the ALJ considered several medical opinions and assessed the persuasiveness of each opinion in accordance with the regulations, and found NP Blatt's opinion is "not persuasive."³ (Doc. 14-2, at 30). In evaluating NP Blatt's opinion, the ALJ determined its

---

³ As Roth notes, the ALJ's decision inadvertently referred to the Mental Residual Functional Capacity Assessment by NP Blatt as having been completed by Ami Reigel, LCSW. (Doc. 14-2, at 30). Reigel and NP Blatt provided counseling and mental health treatment to Roth throughout the period at issue; however, Reigel did not offer an opinion with regard to Roth's restrictions, as Reigel did not submit an opinion. The Court agrees with Roth that it is clear that the ALJ intended to refer to the Mental Residual Functional Capacity Assessment submitted by NP Blatt, and the Commissioner has not contested this point. (Doc. 15, at 12).

persuasiveness by considering both the consistency and supportability of the opinion. Regarding supportability, the ALJ explained that the opinion:

> is not well supported by the clinical findings from these treatment records, which while showing some deficits, also find [Roth] to be friendly, calm, attentive, and cooperative with normal speech and no gross behavioral abnormalities or signs of hyperactive or attentional difficulties. [Roth] is found to be fully oriented with intact associations, logical thinking, appropriate thought content without apparent signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process or suicidal or homicidal ideas and to have intact cognitive functioning, short- and long-term memory and appropriate insight and judgment.

(Doc. 14-2, at 30-31).

Additionally, the ALJ articulated why the opinion was not consistent with the record, explaining that "this level of limitation is not consistent with the conservative level of treatment received by [Roth], which has been through medication management and outpatient therapy with no need for emergency intervention or more intensive treatment despite [Roth] reporting multiple outside stressors during her treatment." (Doc. 14-2, at 31). Therefore, the ALJ's evaluation of the medical opinion of NP Blatt's comported with the Social Security Regulations. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Roth argues that the factor of supportability is not adequately addressed because the ALJ relies on generalizations to support his conclusions that the opinion is not well-supported by the clinical findings from the treatment records. (Doc. 17, at 5). Furthermore, Roth avers the factor of consistency is not adequately addressed because the ALJ's declaration that "this level of limitation is simply not consistent with the conservative level of treatment" also fails to comply with the regulations. (Doc. 17, at 5). However, the Court finds that the ALJ clearly evaluated all medical opinions for their persuasiveness and "explain[ed] how [he or she] considered the supportability and consistency factors" in making his determination. *Mercado*

*v. Kijakazi*, No. 1:21-CV-365, 2022 WL 4357484, at *18 (M.D. Pa. Sept. 20, 2022) (concluding that substantial evidence supported ALJ's assessment of medical opinion evidence where ALJ explained how [he or she] considered the supportability and consistency factors in making his determination by discussing how the findings of the medical opinions at issue were not persuasive because they were inconsistent with physical examinations findings and supported only by plaintiff's subjective reports). Thus, it appears that Roth is requesting the Court to re-weigh the evidence, which the Court cannot do. *See, e.g., Rutherford v. Barnhart*, 399 F.3d 46, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for those of the fact-finder'")).

Upon consideration of the ALJ's decision, the Court finds that substantial evidence supports the ALJ's evaluation of NP Blatt's opinion. The Court notes again that "[t]he ALJ – not treating or examining physicians or State agency consultants–must make the ultimate disability and RFC determinations." *Chandler*, 667 F.3d at 361. Moreover, the ALJ's evidentiary evaluation was supported by substantial evidence; that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). To the extent that Roth asks the Court to reweigh the evidence and arrive at a different conclusion, courts "are not permitted to re-weigh the evidence or impose their own those factual determinations" in reviewing disability appeals. *Chandler*, 667 F.3d at 359. Accordingly, the Court finds that the ALJ's evaluation of the medical opinions of NP Blatt is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## V. CONCLUSION

Based on the foregoing reasons, the Commissioner's decision to deny Roth's application for disability benefits is **AFFIRMED**, final judgment is entered in favor of the Commissioner and against Roth, and the Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

**Dated: March 20, 2023**                    *s/ Karoline Mehalchick*
                                                               **KAROLINE MEHALCHICK**
                                                               **Chief United States Magistrate Judge**